Hatch, J.
The rights of the parties in this action have been adjudicated by the court of appeals, (106 N. Y., 142; 8 N. Y. State Rep., 612). As there settled, the plaintiff is entitled to an opening through this fence “of a size reasonable, proper and fit, which shall be opposite to the hotel and adjacent to the premises conveyed by the deeds, and large enough for the convenient access of passengers and their baggage to and from the said strip, which opening must at no time be closed against such passengers and their baggage, and which access must be subject to all proper regulations of police and railroad discipline of persons on the said premises.”
It was conceded upon the trial that for a period of eighty-three days no opening whatever was maintained, through the fence, which led to or upon the twenty foot strip or which gave access to defendant’s depot. It cannot, therefore, be successfully maintained that, during that period, the plaintiff was in the enjoyment of his rights secured by his lease. He was deprived of such right by the act of the de *421 fendant, and, in consequence, became entitled to recover at least nominal damages, within the rule laid down.
So far as the right to use the alley lying west of the hotel is concerned, the defendant has not shown any right or title to that portion whatever, much less a right, which authorized them to enclose and appropriate the exclusive use to themselves, to the exclusion of the plaintiff. It was a naked assumption of right resting upon no authority to support it. The right to the use of this alley was an appurtenant to the hotel which passed with plaintiff’s lease. No grant or conveyance of this portion of the premises by Wadsworth. or his devisees was ever, so far as the record discloses, made to the defendants. Consequently, when the defendant enclosed that portion, it committed a trespass upon the plaintiff for which he became entitled to recover such damages as he has sustained. The defendant, however, insists that no recovery can be had under plaintiff’s complaint in this action for the reason that his alleged cause of action is based upon an assumed right that plaintiff has a right to use and occupy the twenty foot strip as tenant in common with the railroad company, and that solely by reason of the erection of the fence, plaintiff had suffered damage. His claim cannot be sustained. The allegations of the complaint are that the defendant erected the fence not only upon the twenty foot strip but also upon that portion of the alley lying westerly of the hotel, and that by reason of such erection plaintiff has been deprived of the use and enjoyment of said alley or way, as well as being prevented from using and enjoying the southerly twenty feet, and that by reason of being deprived of the use of the westerly portion of the alley or way the plaintiff’s business had been largely interfered with and broken up. As already seen in the westerly portion of the alley the plaintiff had acquired no right to erect the fence, and the allegations of the complaint show this to be a clear invasion of plaintiff’s rights and states a perfect cause of action.
It is undoubtedly true that the theory of the complaint is that the defendant had no right to erect or maintain the fence, but the allegation is broad enough to embrace the failure to provide an opening, as the allegation is that the whole fence is an obstruction. This includes such portion as the defendant was required to keep open. It does no violence to the rights of the parties, and does not bring in a new cause of action to now amend the complaint to conform to the proofs. Code Civil Pro., § 723; Reeder v. Sayre, 70 N. Y., 190.
The complaint will therefore be considered as amended to conform to the proofs, and should be so entered as amended in the judgment-roll. No error was therefore committed by the court in refusing to non-suit the plaintiff, or to *422 direct the jury to find nominal damages. The defendant ■ also claimed that after the 2d of December, 1881, they in all respects substantially complied with aU the requirements contained in the reservations in the deed, by keeping posted gatemen to let out and admit passengers at the gates in the westerly end of the fence. These gates did not lead on to the twenty foot strip, but into defendant’s depot; but it is claimed by defendant, that there was no travel by passengers over the twenty foot strip after the trains were run into the depot, that it only existed when the trains stopped opposite plaintiff’s hotel, and that long before the fence was erected the trains had ceased stopping there, and the travel was upon the ten foot walk, being diverted from the twenty foot strip, by reason of the delivery of passengers at a different point, and in consequence, plaintiff has failed to show any damage; that no damage was shown while the gates were closed, as it simply prevented passengers from going over the ten foot walk, for which no action would lie. Upon the other hand it is claimed by the plaintiff, that the opening should be opposite the entrance to the hotel, where it would be observed by passengers in passing, and so indicate a way to his hotel, or give information, where otherwise would appear an unbroken fence and obstruction, through which passengers could not pass; that for many years, large numbers of passengers have come that way and only ceased when the fence was erected.
The statement of these respective claims, which were supported by evidence on either side, serves to make it clear that they are both legitimate arguments to be addressed to a jury, from which, under the evidence, they would be warranted in finding either proposition; but there was no such failure of proof upon the one side, or preponderance upon the other, as would justify a court in withholding the question from the jury. We therefore think the question one which was properly left for their determination.
Upon the trial of this action, the plaintiff was permitted to ask and receive answer to the following question:
“ Q. Do you know what the rental value of your Continental property, real and personal, would have been between the 10th day of September, 1881, and the 28th day of January, 1884, if there had been a sufficient opening kept and maintained by the defendant opposite to your hotel, for the convenient access of passengers and their baggage to and from the twenty-foot strip of land lying south of the hotel? ”
Objection was made and overruled, to which, the defendant took exception, and the witness answered:
“A. Yes, I think I do. It would be worth $12,000 a year.”
The witness was then asked:
*423 “ Q. What was it worth in fact as the property was situated during that period of time ? ”
This was also objected and excepted to, and the witness answered:
“I don’t consider it worth anything.”
The ground of objection was threefold.
First. That the rental value is not the proper measure of damage.
Second. That the witness was not shown competent or qualified to speak upon the subject.
Third. That it called upon the witness to determine what was a reasonable, fit and proper opening.
The action is brought to recover damages to the leasehold interest held by plaintiff. The evidence tended to show that ■the acts of the defendant decreased the volume of business done by plaintiff. So far as the business was thus diverted from its usual channel, it measurably decreased the value of the leasehold interest, and consequently its rental value. We think it falls within the class of cases which hold that where acts are committed which tend to impair the use and •enjoyment of the premises, the true measure of damage is the depreciation of the rental value. Jutte v. Hughes, 67 N. Y., 267-271; Francis v. Schoellkoph, 53 id., 152-55.
It appears by the record that the question put called for the knowledge of the witness with respect to the subject matter. To this extent the question was unobjectionable, at least so far as it related to the rental value; it also appears that he answered in the affirmative, so that so far as the witness went he claimed to know. Aside from this however, it did appear from his previous examination that he had known this hotel property since 1845 and had been familiar with it since about 1855, and that he had been its proprietor and lessee, since January, 1874. This was suffieient knowledge to permit him to express an opinion as to its rental value. There is no fixed rule measuring the extent of knowlede which must be possessed by a witness before he is permitted to express an opinion as to value. When he is shown to have some knowledge upon which to base it, he is allowed to speak and the weight to which it is entitled is for the jury to determine. Bedell v. Long Island R. R. Co., 44 N. Y., 367-370; Jarvis v. Furman, 25 Hun, 391-4; Mercer v. Vose, 67 N. Y., 56-8;
The third ground presents a more serious question. As we have seen, the court of appeals have determined the rights of the plaintiff. It is upon these rights, as thus defined, that the parties come to trial. For a period of eighty three days it is conceded upon the trial that no opening of any character was maintained, at the expiration of which time the defendant caused to be placed in the westerly end of the fence two gates at which it stationed a gate- *424 man, with instructions to permit all persons to pass out who desired and to permit all persons to enter who applied, if they had a ticket and the train they desired to take was ready to leave the depot. No baggage, save such as was carried by hand, was allowed to pass through the gates or be received at this point. The defendant then claimed that this was in all respects a substantial compliance with the conditions of the deeds, and upon this the plaintiff joined issue. The bulk of the evidence given upon the trial was devoted to this contention as to whether this was, or was not, a proper, fit and suitable opening. In submitting the-case to the jury the court said:
“The first (question) is, has the defendant, as it is by law required, maintained a suitable, convenient and proper opening for the passage of passengers to and from this strip of land, as provided they shall do?” The claim of the plaintiff was that he was entitled to an opening opposite the Exchange street entrance and of like width and height. It is thus seen that the evidence offered and received, bore upon a vital point in the the case which was a question solely for the jury to determine. The question as put,, allowed the witness to determine and express an opinion upon what he conceived to be a fit, reasonable and proper opening, and his opinion was based thereon. In this wears inclined to think he invaded the rule and usurped the province of the jury. Ferguson v. Hubbell, 97 N. Y., 507; Schwander v. Birge, 10 N. Y. State Rep., 803.
But we are also of opinion that this error was subsequently cured. It was undisputed that there was opposite the southerly entrance to the hotel two gates making an opening twelve feet wide, which were kept locked; there was-no contention but that their size answered the requirements of the reservations in the deeds. This was all before the jury. The only point therefore lacking was, did Avery base his opinion upon this opening provided for by the locked gates? If he did then, the jury had before them every fact upon which he based his opinion. Upon cross-examination he was asked:
“ Mr. Avery, you say the difference in the rental valuéis due to your not having a proper and sufficient opening in the twenty foot strip?”
“Yes, sir, I think it is.”
“Do you mean by that that you think that by reason of' this fence being there and the gate being closed that you have been prevented from doing business with people on that twenty foot strip or with the people coming from the depot? “The closing of this opening prevents people riding, in the depot from seeing any opening.”
*425 “ What you claim is that because the people didn’t get to your hotel from the depot on the twenty foot strip?
“If there was an opening they could see. It looks like an asylum with a picket fence around it.”
It thus appears that his attention was specifically called to the very subject upon which he had based his opinion and he designated the opening contemplated by him, as there was but the one opening to which he could refer.
This, we think, presented to the jury all the facts upon which he based his opinion, and satisfies the rule of law.
The farther claim is made that excessive damages were awarded. The accurate measurement of damages in cases of this character is beset with much difficulty. How many passengers would have patronized plaintiff’s house if the-opening was properly provided, does not admit of accurate estimate. What the rule requires is that the jury shall pass judgment upon all the facts and circumstances measuring such as are definite, with approximate accuracy, and such as are not susceptible of precise and accurate measurement,, by the exercise of sound and considerate judgment, having reference to the surroundings and circumstances of the-case. Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y., 219.
In this case the jury had before them the size and capacity of the hotel, its furniture and surroundings, the manner in which it was conducted, and the source of its patronage for many years. They had also the right to draw the inference from the reservations in the deeds, that free access to and from the twenty foot strip and thence to the cars and depot of defendant was recognized at the time as a valuable appurtenant right to the hotel and a source of much profit. In addition to this the plaintiff has testified that with the opening provided for in the deeds, the rental value of the-hotel was $12,600 per annum, and without them it was-valueless ; that the receipts of the restaurant fell off two-thirds, and the cash receipts shrunk from $1,900 per month to $700. These were all considerations for the jury. It was. a case peculiarly for them. Drucker v. Manhattan R. R. Co., 106 N. Y., 157, 164 ; 8 N. Y. State Rep., 599.
If the testimony of plaintiff is true, then the verdict cannot be said to be excessive. Of his credibility the jury were the judges.
The court in submitting the case to the jury was careful to call special attention to the claimed contradictions of the plaintiff, and cautioned the jury in respect thereto. The charge was as full and fair on that subject as the defendant was entitled, and, in one respect, more favorable to defendant than it was entitled, for it expressly withdrew all *426 claims for damage except such as arose from not maintaining an opening into the twenty foot strip, thus ignoring the appropriation of the alley at the westerly end of the hotel, which plaintiff was entitled to have and use.
We may not set aside, solely for the reason that the facts would seem to require a verdict for a smaller sum; the subject of damages is for the jury to determine and must rest in their judgment and discretion, and unless the court' can clearly see that the verdict is the result of passion, prejudice, partiality or corruption, or that the jury have been improperly influenced, the court should not interfere. Peck v. N. Y. C. and H. R. R. R. Co., 8 Hun, 286.
In bierbaur v. N. Y. C. and H. R. R. R. Co. (15 Hun, 559), the action was to recover damages for the death ox plaintiff’s intestate, caused by plaintiff’s negligence. Deceased was about twenty-one years of age and earning about twenty-five dollars per month, was unmarried, had no children, but left him surviving a father sixty-five years old, a mother, two brothers and a sister residing in Germany. The verdict was for $5,000. The judge writing the opinion was unable to see how the verdict could be sustained upon any theory of legitimate damages, yet the court upheld the verdict for the reason that they could not plainly see that any improper element was considered or influenced the jury. ■ Affirmed on appeal, ,77 N. Y., 588; Bowles v. Rome, W. and O. R. R. Co., 12 N. Y. State Rep.,457;.Thorne v. Turck, 10 Daly, 327; affirmed on appeal, 94 N. Y., 90.
In all of the above cases the facts were quite as strong warranting interference as are here presented. This case has been three times tried. Upon the first trial the jury rendered a verdict in plaintiff’s favor for $20,000, which was set aside as excessive. Upon the second trial a verdict was rendered for $6,000; this was set aside for the reason that the ruling of the court was in conflict with the conclusion of the court of appeals as laid down in Avery v. N. Y. C. and H. R. R. R. Co. (supra; subsequently decided, ante, p.
The present trial results in a verdict of $10,000. Under the rule, we cannot say that the jury have been improperly influenced, or that the damages are excessive. Mahar v. Simmons, 14 N. Y. State Rep., 443; Shaw v. Boston and Wor. R. R. Co., 8 Gray, 46.
Defendant also claims that the court erred in not holding as a matter of law that the regulation prescribed by it with respect to persons passing through the gates was a reasonable regulation. If we assume that this was error, we think that it was cured by subsequent instruction to the jury. Counsel for plaintiff stated that he consented that the court might chargé that the regulation was a reasonable one. Counsel for the defendant stated that he declined *427 to accept the admission, therefore the court said: “I will so charge, if you request.” Then followed a statement by the court, “that the regulation regarding the admission of persons at the little gates was a reasonable and proper regulation.”
The criticism is that the court did not so charge unless counsel requested it, and that no request was made. We think otherwise; that the fair construction of the whole language is that the counsel had requested the court so to charge, and that the reply was made to counsel, so that the court should not misunderstand, and that the charge was made, the counsel acquiescing therein. In this view no error remains.
We have examined all the other exceptions and rulings urged upon our attention and find no error.
The order denying the motion for a new trial is therefore affirmed, with costs.
Beckwith, Ch. J., dissents, and is of opinion that the verdict for damages was excessive; Titus, J., not sitting.